Faisal Gill (#263416)
Gill Law Firm
11330 Ventura Blvd
Studio City, CA
310-418-6675
202-318-5331 (fax)
Fgill@glawoffice.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CENTRAL CALIFORNIA

| | |
|---|---|
| SFO TECHNOLOGIES, PRIVATE LTD<br>Plot No. 2<br>Cochin Special Economic Zone<br>Kakkanad, Kochi-682 037 India<br><br>SFO TECH, INC<br>Falcon Place<br>Suite 116<br>Sterling, VA 20166<br><br>      Plaintiffs<br><br>BRIAN SHANE<br>3985 PRADO DE LAS FRUTAS<br>CALABASAS CA 91302<br><br>And<br><br>DAVID SHANE<br>3657 Cody Road<br>Sherman Oaks, CA 91403<br><br>And<br><br>RICHARD SHANE<br>191 Seminary Rd<br>Menlo Park, CA 94025<br><br>And | COMPLAINT<br><br>JURY TRIAL DEMANDED |

1

---

COMPLAINT

| | |
|---|---|
| JULIE SHANE | ) |
| 3985 PRADO DE LAS FRUTAS | ) |
| CALABASAS CA 91302 | ) |
| | ) |
| And | ) |
| | ) |
| KIRK WALDRON | ) |
| 2066 Creekwood Street | ) |
| Westlake Villiage, CA 91361 | ) |

Comes Now, though undersigned counsel, Plaintiffs SFO Technologies Private LTD and SFO Tech, INC and upon information and belief makes this claims and allegations against Brain Shane, David Shane, Richard Shane, Julie Shane, as trustee of the Brian and Julie Shane Family Trust, and Kirk Waldron for fraud and conspiracy to commit fraud.

**INTRODUCTION**

1. The Plaintiffs were in the process of purchasing the company known as Qual Pro, INC from Defendants. Defendants had open invoices of $262, 227.12 owed to Calumet a supplier of Qual-Pro.

2. Plaintiffs contend that on the order of Brain and Richard Shane, Kirk Waldron, Chief Financial Officer for Qual-Pro, asked finance staff to delete Calumet accounts payable from the system thereby purposefully concealing from the Plaintiffs the amount of money owed to Calumet.

3. Calumet now seeks the open invoices from Plaintiffs, as the new owners of Qual-Pro.

**JURISDICTION**

4. Jurisdiction is proper under 28 USC § 1331 and 1332. Plaintiff SFO Technologies Private Ltd, is a citizen of the Country of India, SFO Tech, INC is a corporation

organized under the laws of the State of Delaware and is a citizen of the State of Delaware. All Defendants are residents and citizens of the State of California.

5. Venue is proper 28 USC § 1391(b)(1) as all the events occurred in this District.

## PARTIES

6. Plaintiff SFO Technologies Private Ltd is a company organized and operating under the laws of the Country of India. It is the ultimate parent company of SFO Tech, Inc and was a purchaser of Qual-Pro, Inc as per Share Purchase Agreement executed between the parties on September 29, 2017.

7. Plaintiff SFO Tech, INC, is a corporation organized under the laws of the State of Delaware, with offices in the State of Delaware only. It is a wholly owned subsidiary of SFO Technologies Private Ltd. It was also a purchaser of Qual-Pro on September 29, 2017.

8. Defendant Brian Shane, is a resident and citizen of the State of California and was the Chief Executive Officer of Qual-Pro at the time of purchase and was owner of Class A shares in Qual-Pro.

9. Upon information and belief, Brian Shane is a trustee of the Brian and Julie Shane Family Trust, an owner of Class A shares in Qual-Pro.

10. Defendant Richard Shane is a resident and citizen of the State of California and was an officer of Qual-Pro at the time of purchase and was owner of Class A shares in Qual-Pro.

11. Defendant David Shane is a resident and citizen of the State of California and was an officer of Qual-Pro at the time of purchase and was owner of Class A shares in Qual-Pro.

12. Upon information and belief, Julie Shane is a trustee of the Brian and Julie Shane Family Trust, an owner of Class A shares in Qual-Pro.

13. Kirk Waldron is a resident and citizen of the State of California and was the Chief Financial Officer of Qual-Pro at the time of purchase.

**Factual Background**

14. In August 2016, Plaintiffs entered into negotiations to purchase Qual-Pro, Inc.

15. Plaintiffs engaged in extensive due diligence as part of the sale process.

16. As part of the due diligence on part of Plaintiff, Defendants provided them with Qual-Pro's financial documents, its assets and liabilities.

17. Defendants had a duty to make sure that all the information they provided to the plaintiffs about their financials, including but not limited to open invoices, balance sheets, inventory and any other financial documents, were true and accurate.

18. In order to conduct an accurate accounting and come up with the correct valuation the Plaintiffs had to solely rely on the accuracy of the information provided by Defendants.

19. On September 29, 2017, Plaintiffs completed the sale and signed the Stock Purchase Agreement for Qual-Pro.

20. On March 8, 2019, Calumet, a supplier to Qual-Pro, advised Qual-Pro that its account would be put on hold due to back payment owed.

21. On March 8, 2019, Calumet advised that there were $262,227.12 still owed to Calumet for previous invoices dating back as early 2015.

22. Andrew Kingston, a senior executive of Plaintiff, ordered a financial reconciliation of the Calumet account.

23. On March 20, 2019, Andrew Kingston sent Defendant Richard Shane an email informing him of the open invoice of Calumet.

24. On April 4, 2019, Ms. Natalie Yamaguchi from Qual-Pro's finance department informed Mr. Andrew Kingston that on several instances, Defendant Waldron would order the finance department to delete invoices from ledgers but would then be resolved after acquisition.

25. Robin Whitlock of Qual-Pro's finance department also stated that on September 28, 2016, Defendant Waldron ordered the finance department to delete certain invoices from the system.

26. Qual-Pro's finance department deleted invoices on Defendant Waldren's orders.

27. Robin Whitlock provided a list of invoices that were backed out on September 28, 2016.

28. Approximately a month after Plaintiffs started negotiations, Defendants deleted invoices thereby making it seem that Qual-Pro was more valuable than it was.

29. Calumet was one of the invoices that Defendant Waldron asked finance department to delete.

COMPLAINT

30. On April 1, 2019, Andrew Kingston and Defendant Richard Shane met in San Francisco to discuss the Calumet invoices. Defendant Shane stated that he needed proof and documents.

31. On April 5, 2019, Andrew Kingston sent Defendant Richard Shane an email informing him that Calumet invoice remained and that Defendant Waldron asked that invoices be deleted.

32. On April 8, 2019, Andrew Kingston informed Calumet that their invoices were not in Qual-Pro's system.

33. Later Andrew Kingston discovered that Calumet's invoices were one of the invoices that backed out of the system.

34. Because the invoices were backed out, Plaintiff was not aware of the Calumet invoices during the due diligence period.

35. Defendant Richard Shane in an email stated that Calumet was listed in the system on December 31, 2015.

36. The date Defendant Richard Shane gave was months before Defendant Richard Waldron ordered finance to remove the invoices from the accounts payable system.

37. Defendant Richard Shane or any other defendant did not respond as to why Defendant Waldron ordered finance to delete the Calumet invoices from the accounts payable system.

38. When Plaintiffs teams were conducting their due diligence in 2017, the Calumet invoices were not in any accounting systems.

39. By having Calumet invoices in the accounting system on December 31, 2015 and then not having them in any subsequent systems, Plaintiff reasonably believed that the past due Calumet invoices were paid by Defendants.

40. Defendants refuse to pay the Calumet invoices totaling $262,227.12.

41. Calumet is demanding that their previous invoices be paid.

42. Since these were invoices that were accrued prior to the sale to Plaintiff, Defendants are responsible for the payment.

43. Defendants also stated that they had a piece of testing equipment called the "L-3 Ocean Tester" that was worth $133,199.15.

44. Defendants represented to the Plaintiff that this equipment could be capitalized and was ready.

45. The order to capitalize and count the L3 Ocean Tester as an asset was given by Defendant Waldron.

46. Plaintiffs relied on Defendants' assurances that the L-3 Ocean Tester a proper piece of equipment and counted it as an asset.

47. The L-3 Ocean Tester increased the valuation of the Qual-Pro by several multiples.

48. In March 2019, Plaintiff discovered that the L-3 Ocean Tester was nothing more than a bag of parts that was nowhere near ready.

49. Defendants knew that the L-3 Ocean Tester was not ready and not worth $133,199.15.

50. Defendants fraudulently and with intent to deceive listed L-3 Ocean Tester as a fully capitalized asset.

## COUNT 1- FRAUD IN THE INDUCEMENT

51. Plaintiffs realleges and incorporates every allegation paragraphs 1-50 as set forth herein.

52. Defendants purposefully deleted invoices due to Calumet in order to lower the amount of accounts payable for Qual-Pro.

53. Defendants deleted the invoices from Calumet so that they could get a higher sale price for Qual-Pro.

54. By deleting the invoices, Plaintiffs were not able to perform an accurate accounting.

55. Defendants knowingly falsely represented that the accounts payable were lower than they really were.

56. Defendants deleted the invoices with the intent to deceive or induce reliance.

57. Plaintiff's justifiably relied on the documents and financials presented by the Defendants.

58. The Defendants fraud caused great damage to the Plaintiffs as they paid more for Qual-Pro then they would have had to pay had the invoices not been deleted.

## COUNT II- FRAUD IN THE INDUCEMENT

59. Plaintiffs realleges and incorporates every allegation paragraphs 1-58 as set forth herein.

60. Defendants purposefully misled the Plaintiffs by stating that the L-3 Ocean Tester was completed and was a fully capitalized asset.

61. Defendants misled Plaintiffs about L-3 Ocean Tester so that they could get a higher sale price for Qual-Pro.

62. Defendants knowingly falsely represented that the L-3 Ocean Tester was completed and capitalized as an asset.

63. Defendants misled Plaintiffs about the L-3 Ocean Tester with the intent to deceive or induce reliance.

64. Plaintiffs justifiably relied on the documents and statements regarding the L-3 Ocean Tester presented by the Defendants.

65. The Defendants' fraud caused great damage to the Plaintiffs as they paid more for Qual-Pro then they would have had L-3 Ocean Tester not been included as a capitalized asset.

**COUNT III- BREACH OF FIDUCIARY DUTY**
**(Brain Shane, Richard Shane, David Shane, Kirk Waldron)**

66. Plaintiffs realleges and incorporates every allegation paragraphs 1-65 as set forth herein.

67. Defendants Richard Shane, Brian Shane, David Shane and Kirk Waldron were all officers and directors of the Qual-Pro at the time of sale to Plaintiff.

68. As such they had a duty of care under CA Corp Code § 309 to act and serve in good faith.

69. Deleting invoices from accounts payable is not acting in good faith.

70. This breach of the duty to care and to act in good faith damages the Plaintiffs in that they paid more for Qual-Pro than they would have had to.

WHEREFORE, the Plaintiff pray that this honorable Court:

1. Declare that Defendants did commit fraud when they deleted the invoices for Calumet.
2. Award compensatory damages in the amount of $2.5 million.
3. Award punitive damages in the amount of $2.5 million
4. Award court costs and reasonable attorney's fees.
5. Award any other damages the Court deems appropriate.

PLAINTIFFS HEREBY DEMAND A JURY TRIAL IN THIS MATTER.

Dated: 1 August 2019

                                        Respectfully Submitted,

                                        /S/

                                        Faisal Gill
                                        Counsel for Plaintiffs

COMPLAINT